**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, | Civil No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| MICHAEL J. MCCORMICK, | **Jury Trial Demanded** |
| Defendant. | |

---

Plaintiff Boston Scientific Corporation, for its Complaint against defendant Michael J. McCormick ("McCormick"), alleges as follows:

**PARTIES**

1. Plaintiff Boston Scientific Corporation ("Boston Scientific") is a Delaware corporation with its principal place of business in Natick, Massachusetts, and manufacturing facilities in Arden Hills and Maple Grove, Minnesota.

2. Boston Scientific is one of the world's largest manufacturers of medical devices. Among other products, Boston Scientific develops, manufactures, distributes, and sells cardiac rhythm management ("CRM") devices, including pacemakers and implantable cardioverter defibrillators, which use electrical pulses to treat improperly-beating hearts and other cardiac diseases.

3. Upon information and belief, defendant Michael J. McCormick ("McCormick") is a citizen and resident of Arizona.

4. McCormick is a former employee of Guidant Sales Corporation ("GSC"), which is a wholly-owned subsidiary of Boston Scientific. Pursuant to a corporate reorganization that occurred on July 31, 2010, Boston Scientific was assigned, and now possesses, all of GSC's rights under the contract between GSC and McCormick that is at issue in this litigation. Boston Scientific and its subsidiary GSC shall collectively be referred to in this Complaint as "Boston Scientific."

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, in that the money damages that the plaintiff seeks, combined with the monetary value of any injunctive relief that the plaintiff may seek, exceeds $75,000, and the controversy is between citizens of different states. Venue is proper in this district because McCormick has consented to the jurisdiction of this Court.

## FACTS

### Overview of the Cardiac Rhythm Management Industry

6. This case involves the sale and marketing of CRM devices. The market for CRM devices is very competitive, and the people who sell these technologically complex devices must not only be skilled salespeople, but they must also have significant technical and clinical knowledge. Sales representatives are typically in the operating room when doctors implant CRM devices in patients. CRM sales representatives also provide technical assistance to the doctor during the implantation procedure itself and during patients' follow-up visits.

7.	Because of the deep sales, technical, and clinical knowledge that CRM device salespeople must have, and because the clientele—hospitals and doctors—is very sophisticated, Boston Scientific devotes extensive time, effort, and expense to training and supporting its sales employees so they can successfully market and sell Boston Scientific's CRM devices.  Because of Boston Scientific's intensive training of its sales employees, Boston Scientific incurs substantial expense in training replacements for sales representatives who leave Boston Scientific.

8.	The doctor is the principal customer for CRM devices, so the personal relationships that sales representatives and managers form with doctors are critical to the representatives'—and thus the company's—success.  Indeed, many doctors consider these relationships to be an important factor in deciding whether to use a particular company's CRM devices.  When successful sales representatives or managers leave Boston Scientific, Boston Scientific often loses sales in the accounts served by the former employees or the representatives that they managed.

9.	Because CRM sales representatives are so important to the success of a company, successful sales people – like McCormick – have the leverage to negotiate very favorable compensation packages, and are paid extremely well.

### **Michael McCormick Signs a Term-of-Years**
### **Employment Agreement with Boston Scientific**

10.	Since January 1, 1999, McCormick worked for Boston Scientific as a sales representative in Tucson, Arizona, covering a sales territory that included, but was not limited to, Tucson Medical Center, Tucson Heart Hospital and University Medical

3

Center. McCormick has spent more than a dozen years selling and assisting in the implants of CRM devices for Boston Scientific.

11. On November 27, 2006, McCormick and Boston Scientific entered into an Employment Agreement (the "Agreement") for a term of five years commencing on January 1, 2007 and expiring on December 31, 2011. A true and correct copy of the Agreement is Exhibit A to this Complaint.

12. On November 27, 2006, McCormick and Boston Scientific also executed a written modification to the Agreement ("Addendum"). A true and correct copy of the Addendum is Exhibit B to this Complaint.

13. Most CRM sales representatives receive the bulk of their compensation from commissions on products that the representative sells, with a comparatively modest base salary. A sales representative's compensation, therefore, can vary dramatically from year to year, depending on how successfully he or she sells CRM products.

14. Under McCormick's Agreement, by contrast, Boston Scientific agreed to pay McCormick substantial guaranteed compensation for each of the five years of the Agreement's term.

15. Specifically, under the Agreement, McCormick received a five-year commission guarantee in exchange for signing to a five-year-term employment agreement. For the first three years of the Agreement (years 2007, 2008 and 2009), on top of his monthly base salary , Boston Scientific agreed to pay McCormick an additional fixed amount of guaranteed compensation ("Guaranteed Payments"). As set forth in the Agreement, as amended, years four and five of McCormick's term of employment (2010

and 2011, respectively) were governed by a different arrangement. For those years, in addition to his monthly base salary, the parties agreed that Boston Scientific would pay McCormick monthly guaranteed payments equal to 80% of McCormick's average monthly commissions ("Earned Commissions") earned in 2005 and 2006. (In the Addendum to the Agreement, Boston Scientific had agreed to increase from 65 percent to 80 percent the percentage applied to Earned Commissions).

16. McCormick's compensation was not limited to the guaranteed amounts under the Agreement. During the entire period of the Agreement, if McCormick's sales of Boston Scientific products generated commissions greater than his guaranteed compensation, Boston Scientific would pay him that excess, in addition to his guarantee.

17. In exchange for this guaranteed compensation in excess of $1 million, McCormick agreed to work for Boston Scientific for the full five-year term and "devote his full attention, knowledge, and skills faithfully, diligently, and to the best of his ability to the performance of his duties."

18. The Agreement did not permit McCormick to unilaterally terminate his employment, and Boston Scientific generally could not terminate McCormick's employment without cause.

19. McCormick explicitly agreed to the exclusive jurisdiction of Minnesota courts and application of Minnesota law when he executed the Agreement.

20. The Agreement contains a choice-of-law provision which provides that the Agreement "shall be governed by the laws of the State of Minnesota regardless of the conflicts of laws rules of Minnesota or of any other state."

21. The Agreement also contains a venue-selection and jurisdiction provision, by which McCormick consented to "the exclusive jurisdiction of the state and federal courts of the State of Minnesota" for the resolution of any disputes relating to the Agreement.

22. In signing the Agreement, McCormick also agreed that "Boston Scientific shall be entitled, in addition to any other remedies available, to injunctive or other equitable relief to require specific performance or to prevent a breach of the provisions of this Agreement."

23. The Agreement provides that in the event of any litigation relating to the Agreement, "the prevailing party shall be entitled to recover from the non-prevailing party all reasonable attorneys' fees, costs and expenses" resulting from such litigation.

### Due to Administrative Error, McCormick Is Grossly Overcompensated – Contrary to the Agreement

24. Pursuant to the Agreement, McCormick was to have received his guaranteed payments for 2010 and 2011 in the form of 24 monthly payments of equal size.

25. As a result of an administrative error, however, McCormick received almost his entire guaranteed commission for both 2010 and 2011 in 2010. Thus, in 2010 alone, McCormick received more than 90% of his two-year guarantee – ultimately representing an **overpayment** of $200,605.46.

26. On or about January 12, 2011, Boston Scientific informed McCormick that he had been overcompensated in an amount then exceeding $200,000. Boston Scientific

6

thereafter proposed to enter into a new term-of-years employment agreement with McCormick that contemplated accounting for the overpayment.

27. McCormick rejected that proposal.

### McCormick Breaches His Employment Agreement

28. On May 19, 2011, McCormick, through his counsel, contacted Boston Scientific and purported to resign, effective immediately – in violation of the Agreement – and without repayment of the unearned compensation.

29. Boston Scientific declined to accept McCormick's purported resignation and directed him to comply with his obligations under the Agreement, which remains in effect.

### COUNT 1
### (Breach of Contract)

30. Boston Scientific restates and re-alleges all previous paragraphs.

31. The Agreement is a valid contract, and Boston Scientific has performed its obligations under the Agreement.

32. McCormick has breached the Agreement by, among other things, terminating his employment relationship with Boston Scientific before the term of the Agreement expires.

33. As a direct result of McCormick's conduct, Boston Scientific has been damaged in an amount to be determined at trial, and Boston Scientific is entitled to recover the amount of such damages. Boston Scientific is also entitled to injunctive relief to prevent the further harm it will suffer as a result of McCormick's breach.

## COUNT 2
## (Declaratory Judgment)

34. Boston Scientific restates and re-alleges all previous paragraphs.

35. McCormick entered into a valid written Agreement with Boston Scientific in which he agreed, among other things, to be employed by Boston Scientific for the term of the Agreement.

36. McCormick disputes the existence of a valid and enforceable term-of-years employment agreement between himself and Boston Scientific.

37. An actual existing and bona fide controversy exists between Boston Scientific and McCormick as to their legal relations with respect to the Agreement.

38. Boston Scientific is entitled to a declaratory judgment that the Agreement with McCormick, as amended, is valid and enforceable.

## COUNT 3
## (Conversion)

39. Boston Scientific restates and re-alleges all previous paragraphs.

40. McCormick has wrongfully converted Boston Scientific's property – in the form of unearned compensation – for his own unauthorized use.

41. McCormick has and continues to intentionally deprive Boston Scientific of possession of the property permanently.

42. As such, McCormick has acted and to deprive Boston Scientific of the possession and use of its rightful property, and McCormick has converted same, all without any lawful or equitable entitlement therefor, and contrary to the rights of Boston Scientific as the true owner.

43. As a direct and proximate result of McCormick's actions in this regard, Boston Scientific has suffered damages in an amount to be proven at trial, but believed to be in excess of $150,000.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Boston Scientific Corporation demands judgment against defendant Michael J. McCormick and respectfully asks the Court to:

1. Enter judgment against McCormick for all damages proximately caused by his wrongful actions, and for all other damages, interest, reasonable attorneys' fees, and costs available under the law.

2. Enter a declaration that the Employment Agreement between McCormick and Boston Scientific, as amended, is valid and enforceable pursuant to its terms.

3. Enter an order compelling McCormick to return the total amount of unearned guaranteed payments, together with interest, that he received in error.

4. An order enforcing the Agreement by specific performance to the extent legally permissible or granting other equitable relief.

5. Order all other relief that the Court deems proper and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues in this action.

Dated: May 20, 2011                              FAEGRE & BENSON LLP


*s/ Robert L. Schnell, Jr.*
Robert L. Schnell, Jr., # 97329
*rschnell@faegre.com*
Martin S. Chester, # 31514X
*mchester@faegre.com*
Erin M. Verneris, # 0335174
*everneris@faegre.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000

*Attorneys for Plaintiff
Boston Scientific Corporation*

fb.us.5747754.04